WILLIAM ODLIN, complainant and appellant,

*v.*

THE BINGHAM COPPER AND GOLD MINING COMPANY and THE BINGHAM CONSOLIDATED MINING AND SMELTING COMPANY, defendants and respondents.

[Filed April 21st, 1902.]

1. A preliminary injunction is properly refused when there exists no reasonable ground for apprehending that the injury against which it is sought will be attempted.

Odlin *v.* Bingham Copper and Gold Mining Co.

2. When the matters set forth by a complainant as ground for the inter-position of the court do not show an improper or illegal purpose, an injunction should be refused.

On appeal from an order advised by Vice-Chancellor Stevens, whose opinion is reported in *51 Atl. Rep. 925.*

*Messrs. McGee & Bedle,* for the complainant and appellant.

*Messrs. Lindabury, Depue & Faulks,* for the defendants and respondents.

The opinion of the court was delivered by

VOORHEES, J.

The appeal in this case brings up for review an order advised by Vice-Chancellor Stevens, revoking the interim stay and order to show cause, advised by him May 4th, 1901, wherein he directed that the defendant should desist and refrain from selling any of its assets, except such portion thereof as were disposed of in the usual course of business, and from engaging in any new or different undertaking than such as was contemplated in its cer-tificate of incorporation.

The Bingham Copper and Gold Mining Company was created under the laws of the State of New Jersey, with a capital stock of $2,000,000. It had large assets, consisting of mines, real estate and a smelter, at and near Bingham Canon, Utah, and it was engaged in the business of mining and smelting ore.

The complainant purchased two hundred and fifty shares of the capital stock of this company, of a par value of $10 per share, on May 2d, 1901. In his bill of complaint, filed May 4th, 1901, he alleges that certain directors of the company had procured a corporation to be created under the laws of the State of Maine, called the Bingham Consolidated Mining and Smelting Com-pany, and had issued a prospectus, directed to the stockholders of the Bingham Copper and Gold Mining Company, signed by them and printed in one of the Boston newspapers, setting forth that $5,000,000 of the stock of the Consolidated company should

be issued to be exchanged for the capital stock of the old company, and containing this expression, "to take over all the property of your company," and further stated that seventy-five per cent. of the stock of the original company had already endorsed the plan.   Upon the allegations of this bill the interim stay was granted and the order to show cause was made.

The company answered, denying any purpose on its part of transferring its assets. or of denuding itself of its property or franchises, and each of the persons named in the prospectus filed affidavits therewith, verifying the answer and denying positively any intent or design on their part, either as directors or individuals, of stripping the company of its property, or in any other way preventing it from pursuing the business authorized by its charter, and they further asserted that the only object of the prospectus was to suggest to the stockholders of the old company an opportunity to exchange their holdings for stock of the Consolidated company, if they so desired; and the board of directors of the old company, at a meeting held June 22d, 1901, of which a notice was mailed to each stockholder, unanimously passed a resolution, as follows:

"WHEREAS, At a meeting of the board of directors held on the twenty-fourth day of April, 1901, a circular-letter, addressed 'to the stockholders of the Bingham Copper and Gold Mining Company,' was discussed and adopted by them, and was, at their direction, sent to each of the stockholders; and

"WHEREAS, It has been claimed by some of the stockholders of this company that the said circular expressed an intention on the part of this board to sell and transfer its entire property and assets to the Bingham Consolidated Mining and Smelting Company, a corporation organized under the laws of the State of Maine; now, therefore, be it

"Resolved, That neither this company nor its board of directors now have, or ever have had, any intention of selling or transferring its entire property or assets to the said Bingham Consolidated Mining and Smelting Company, but that, on the contrary, it now is, and always has been, the intention of this company and its directors and officers to conduct and continue to conduct the business of this company as a separate, distinct and independent corporation in good faith, for the sole and equal benefit and advantage of all of its stockholders, unless and until the said stockholders shall, by appropriate and legal action, otherwise order and direct, and this board hereby disclaims any intention to do otherwise; and be it further

"Resolved, That the answer filed by this corporation, under its corporate seal, in the court of chancery of New Jersey, to the bill of complaint

Odlin *v.* Bingham Copper and Gold Mining Co.

of one Odlin, is in fact the answer of this corporation, and that the allegations therein contained are true, and that the said answer correctly and accurately sets forth the facts in relation to the action, intention and attitude of this board and company."

The Consolidated company also answered, denying the principal averments of the bill of complaint.

Upon the presentation of the answers, affidavits and the proof of the passage of the above resolution, the vice-chancellor vacated the temporary injunction or interim stay, and we find no error in his ruling.

The principal ground on which the complainant sought the interposition of the court was that the prospectus or circular-letter showed an intent on the part of the officers of the old company to denude it of all its property by transferring the same to the new company, but a careful reading of this paper fails to disclose any such intent or purpose. It is directed to the stockholders of the Bingham Copper and Gold Mining Company; it states that a new company has been incorporated; that certain stock has been set apart to be exchanged for the stock of the old company, and it advises the stockholders of the old company to accept, in exchange for this stock, the stock of the new company. It further states that seventy-five per cent. of the stockholders have endorsed the plan and consented to the exchange of their stock. It discloses no fraud or illegal attempt upon the part of the officers of either company, and contains nothing to justify the intervention of the court by injunction.

The order advised by the vice-chancellor setting aside the preliminary injunction is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, ADAMS, VREDENBURGH, VOORHEES, VROOM—13.

*For reversal*—None